## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| SAUL VANEGAS, Individually and for Others Similarly Situated<br><br>v.<br><br>UTILIQUEST, LLC | **Case No.** _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Saul Vanegas ("Vanegas") brings this class action to recover unpaid wages and other damages from UtiliQuest, LLC ("UtiliQuest").

2.      UtiliQuest employed Vanegas as one of its Hourly Utility Locators (defined below) in New Jersey.

3.      Vanegas and the other Hourly Utility Locators regularly work more than 40 hours a week.

4.      But UtiliQuest does not pay Vanegas and its other Hourly Utility Locators for all the hours they work.

5.      Instead, UtiliQuest requires Vanegas and the other Hourly Utility Locators to perform significant compensable work "off the clock" without pay.

6.      Specifically, UtiliQuest prohibits Vanegas and the other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned

1

ticket; and UtiliQuest requires Vanegas and the other Hourly Utility Locators to clock out for their shifts when they leave their last assigned ticket (UtiliQuest's "ticket to ticket policy").

7.      But to meet UtiliQuest's strict productivity requirements, Vanegas and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" before arriving to their first assigned ticket and after leaving their last assigned ticket.

8.      Vanegas and the Hourly Utility Locators are thus not paid for the time they spend performing this pre- and post-ticket work "off the clock."

9.      UtiliQuest's uniform "ticket to ticket" policy violates the New Jersey Wage and Hour Law, as amended by the New Jersey Wage Theft Act ("NJWHL"), by depriving Vanegas and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

10.     Likewise, UtiliQuest's uniform "ticket to ticket" policy violates the New Jersey Wage Payment Law, as amended by the New Jersey Wage Theft Act ("NJWPL"), by depriving Vanegas and the other Hourly Utility Locators of earned wages for all hours worked.

## JURISDICTION & VENUE

11.    This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

12.    Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Vanegas' proposed class of Hourly Utility Locators and UtiliQuest are citizens of different states (indeed, Vanegas is a New Jersey citizen, whereas UtiliQuest is a Georgia citizen); and (c) the proposed class of Hourly Utility Locators exceeds 100 members.

13.    This Court has specific personal jurisdiction over UtiliQuest with respect to this action because UtiliQuest employed Vanegas and the other Hourly Utility Locators in New Jersey.

14.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

15.    Specifically, UtiliQuest employed Vanegas in and around Monmouth and Ocean Counties, New Jersey, which are in this District and Division.

## PARTIES

16.    Vanegas worked for UtiliQuest as a Utility Locator in and around Monmouth and Ocean Counties, New Jersey from approximately February 2020 until June 2020.

17.    Throughout his employment, UtiliQuest classified Vanegas as non-exempt and paid him on an hourly basis.

18.    Throughout his employment, UtiliQuest subjected Vanegas to its uniform, illegal "ticket to ticket" policy, prohibiting him from clocking in for his shifts until he arrived at his first assigned ticket and requiring him to clock out when he left his last assigned ticket.

19.    But throughout his employment, UtiliQuest required Vanegas to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

20.    Vanegas brings this class action on behalf of himself and other similarly situated hourly, non-exempt Utility Locators in New Jersey who were subject to UtiliQuest's illegal "ticket to ticket" policy.

21.    UtiliQuest prohibits each of these Utility Locators from clocking in until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

22.    But UtiliQuest also requires each of these Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

23.    Thus, UtiliQuest uniformly deprives these Utility Locators of overtime wages for all hours worked after 40 in a workweek in violation of the NJWHL.

24.    Likewise, UtiliQuest uniformly withholds earned wages from these Utility Locators for all hours worked in violation of the NJWPL.

25.    The putative class of similarly situated employees is defined as:

> **All individuals who worked for UtiliQuest as hourly Utility Locators in New Jersey at any time during the past 6 years ("Hourly Utility Locators").**

26.    UtiliQuest is a Georgia limited liability company headquartered in Alpharetta, Georgia.

27.    UtiliQuest is registered to do business in New Jersey.

28.    At all relevant times, UtiliQuest transacted and conducted substantial business in New Jersey.

29.    Indeed, UtiliQuest maintains a branch office in Freehold, New Jersey.

30.    UtiliQuest may be served through its registered agent: **CT Corporation, 820 Bear Tavern Road, Suite 305, Trenton, New Jersey 08628**.

## FACTS

31.     UtiliQuest bills itself as "a quality provider of damage prevention and infrastructure-related services specializing in underground facility locating serving the gas, electric, and telecommunications industries" across the country, including in New Jersey.[1]

32.     To meet its business objectives, UtiliQuest hires Utility Locators (including Vanegas and the other Hourly Utility Locators) to provide underground utility locating services to its clients.

33.     UtiliQuest uniformly classifies Vanegas and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

34.     Vanegas and the other Hourly Utility Locators regularly work more than 40 hours a week.

35.     But UtiliQuest does not pay Vanegas and its other Hourly Utility Locators for all their hours worked.

36.     Instead, UtiliQuest uniformly subjects Vanegas and its other Hourly Utility Locators to its illegal "ticket to ticket" policy and forces these employees to perform compensable work "off the clock" before and after clocking in and out for their shifts.

---

[1] https://utiliquest.com/about/ (last visited December 11, 2023).

37.    While exact job duties and precise locations may differ, Vanegas and the other Hourly Utility Locators are subject to UtiliQuest's same or similar illegal policy—UtiliQuest's "ticket to ticket" policy—for similar work.

38.    For example, Vanegas worked for UtiliQuest as a Utility Locator in and around Monmouth and Ocean Counties, New Jersey from approximately February 2020 until June 2020.

39.    Vanegas was UtiliQuest's hourly employee.

40.    As a Utility Locator, Vanegas' primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (UtiliQuest's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

41.    Throughout his employment, UtiliQuest required Vanegas to report his work time to UtiliQuest for approval through its uniform timekeeping system.

42.    Throughout his employment, Vanegas regularly worked more than 40 hours a week.

43.    Indeed, throughout the relevant period, Vanegas typically worked 10 hours a day for at least 5 days a week (or 50+ hours a week).

44.    But throughout his employment, UtiliQuest subjected Vanegas to its illegal "ticket to ticket" policy.

45.     Specifically, UtiliQuest prohibited Vanegas from clocking in for his shifts until he arrived at his first assigned ticket and required him to clock out when he left his last assigned ticket.

46.     But UtiliQuest also required Vanegas to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

47.     Specifically, to meet UtiliQuest's strict productivity requirements, Vanegas was forced to review tickets, route plan, make/take calls from UtiliQuest's clients, perform mandatory vehicle inspections on his company-issued vehicle, load his utility locating equipment into his company-issued vehicle, and drive to his first assigned ticket "off the clock" and without pay.

48.     Likewise, after clocking out upon completing his last assigned ticket, Vanegas was forced to drive home, unload his utility locating equipment from his company-issued vehicle, perform mandatory vehicle inspections on his company-issued vehicle, review tickets, route plan, make/take calls from UtiliQuest's clients, and respond to any emergencies "off the clock" and without pay.

49.     This pre- and post-ticket "off the clock" work took Vanegas approximately 1 to 2 hours a day (or 5 to 10+ hours a week).

50.     But under UtiliQuest's illegal "ticket to ticket" policy, UtiliQuest did not pay Vanegas for his mandatory and necessary pre- and post-ticket "off the clock" work.

51.     So, rather than receiving overtime pay for all his hours worked over 40 in a week, under its illegal "ticket to ticket" policy, UtiliQuest only paid Vanegas for the time he worked between his arrival at his first assigned ticket and his departure from his last assigned ticket in violation of the NJWHL.

52.     Likewise, as a result of its illegal "ticket to ticket" policy, UtiliQuest willfully withheld earned wages from Vanegas for the compensable work he performed before he arrived at his first assigned ticket and after he left his last assigned ticket in violation of the NJWPL.

53.     UtiliQuest subjects its other Hourly Utility Locators to the same illegal "ticket to ticket" policy it imposed on Vanegas.

54.     Like Vanegas, UtiliQuest pays its other Hourly Utility Locators on an hourly basis.

55.     Like Vanegas, UtiliQuest requires its other Hourly Utility Locators to report their hours worked to UtiliQuest for approval via UtiliQuest's uniform timekeeping system.

56.     UtiliQuest's records show that, like Vanegas, the other Hourly Utility Locators regularly work more than 40 hours a week.

57.    Indeed, like Vanegas, the other Hourly Utility Locators typically work 10 hours a day for at least 5 days a week (or 50+ hours a week).

58.    UtiliQuest uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Vanegas.

59.    UtiliQuest uniformly requires Vanegas and the other Hourly Utility Locators to complete their work tickets in a timely manner per UtiliQuest's company-wide policy.

60.    UtiliQuest uniformly pressures and expects Vanegas and the other Hourly Utility Locators to complete as many tickets as possible.

61.    And UtiliQuest closely supervises and tracks Vanegas' and the other Hourly Utility Locators' productivity through its ticketing system (Q Manager) to ensure they comply with UtiliQuest's uniform expectations and complete their heavy workloads.

62.    In fact, UtiliQuest installs GPS trackers and/or dash cameras on Vanegas' and the other Hourly Utility Locators' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with UtiliQuest's strict productivity and operational requirements.

63.    But, like Vanegas, UtiliQuest does not pay its other Hourly Utility Locators for all their hours worked.

64.    Instead, UtiliQuest subjects its other Hourly Utility Locators to its same illegal "ticket to ticket" policy that it imposed on Vanegas.

65.    Specifically, UtiliQuest prohibits its Hourly Utility Locators (like Vanegas) from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

66.    But like Vanegas, UtiliQuest also requires its other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

67.    The "off the clock" work Vanegas and the other Hourly Utility Locators perform before they arrive at their first assigned ticket and after they leave their last assigned ticket is similar if not the same.

68.    Specifically, before clocking in for their shifts, the other Hourly Utility Locators (like Vanegas) are forced to review tickets, route plan, make/take calls from UtiliQuest's clients, perform mandatory vehicle inspections on their company-issued vehicles, load their utility locating equipment into their company-issued vehicles, and drive to their first assigned ticket "off the clock" (without pay) to meet UtiliQuest's strict productivity requirements.

69.    Likewise, after clocking out for their shifts, the other Hourly Utility Locators (like Vanegas) are forced to drive home, unload their utility locating equipment from their company-issued vehicles, perform mandatory vehicle inspections on their company-issued vehicles, review tickets, route plan, make/take calls from UtiliQuest's clients, and respond to any emergencies "off the clock" (without pay) to meet UtiliQuest's strict productivity requirements.

70.    And like Vanegas, the other Hourly Utility Locators spend approximately 1 to 2 hours a day (or 5 to 10+ hours a week) performing this compensable pre- and post-ticket work "off the clock" without pay.

71.    UtiliQuest controls Vanegas' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work, and this "off the clock" work is undertaken primarily for the benefit of UtiliQuest's business of providing utility locating services to its clients.

72.    Further, this mandatory pre- and post-ticket "off the clock" work is necessary to the principal work Vanegas and the other Hourly Utility Locators perform as UtiliQuest Utility Locators.

73.    Indeed, Vanegas and the other Hourly Utility Locators cannot provide utility locating services to UtiliQuest's clients in accordance with UtiliQuest's strict productivity and operational requirements unless they perform this pre- and post-ticket "off the clock" work.

74.    In other words, Vanegas' and the other Hourly Utility Locators' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs as UtiliQuest Utility Locators.

75.    Indeed, UtiliQuest could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing Vanegas' and the other Hourly Utility Locators' ability to perform their utility locating work.

76.    Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Vanegas' and the other Hourly Utility Locators' work as UtiliQuest Utility Locators.

77.    Thus, Vanegas and the other Hourly Utility Locators routinely perform this mandatory pre- and post-ticket "off the clock" work for UtiliQuest's—not their own—predominant benefit.

78.    And UtiliQuest knows Vanegas and its other Hourly Utility Locators perform this compensable pre- and post-ticket work "off the clock" because UtiliQuest requires them to do so.

79.    Indeed, UtiliQuest closely monitors and tracks Vanegas' and the other Hourly Utility Locators' work time and locations via its company-wide ticketing system, GPS trackers, and/or dash cameras to ensure they meet UtiliQuest's strict productivity requirements.

80.    Specifically, using timecard details and GPS data tracked by

13

UtiliQuest's uniform ticketing system, UtiliQuest can easily determine whether Vanegas and the other Hourly Utility Locators are working "off the clock" before and after their shifts.

81.    In fact, UtiliQuest management level employees can easily determine if Vanegas and the other Hourly Utility Locators are clocked out and if their vehicles are moving (and, therefore, they are working or traveling to and from tickets).

82.    And Vanegas and the other Hourly Utility Locators repeatedly complained to UtiliQuest about being forced to work "off the clock" to complete their heavy workloads in satisfaction of UtiliQuest's strict productivity and operational requirements.

83.    But UtiliQuest fails to exercise its duty as Vanegas' and the other Hourly Utility Locators' employer to ensure these employees are not performing work that UtiliQuest does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

84.    Thus, UtiliQuest requested, suffered, permitted, or allowed Vanegas and its other Hourly Utility Locators to work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

85.    Despite accepting the benefits, UtiliQuest does not pay Vanegas and its other Hourly Utility Locators for the time they spend performing this compensable work "off the clock."

86.    Thus, under UtiliQuest's illegal "ticket to ticket" policy, Vanegas and the other Hourly Utility Locators are denied overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket during workweeks in which they work over 40 hours in willful violation of the NJWHL.

87.    Likewise, under its illegal "ticket to ticket" policy, UtiliQuest willfully withholds earned wages from Vanegas and the other Hourly Utility Locators for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the NJWPL.

## CLASS ACTION ALLEGATIONS

88.    Vanegas incorporates all other paragraphs by reference.

89.    Like Vanegas, the other Hourly Utility Locators were uniformly victimized by UtiliQuest's illegal "ticket to ticket" policy.

90.    Other Hourly Utility Locators worked with Vanegas and indicated they were paid in the same manner, performed similar work, and were subject to UtiliQuest's same illegal "ticket to ticket" policy.

91.    Based on his experience with UtiliQuest, Vanegas is aware UtiliQuest's illegal "ticket to ticket" policy was imposed on the other Hourly Utility Locators.

92.    The Hourly Utility Locators are known to UtiliQuest and are readily identifiable through UtiliQuest's business and personnel records.

93.    The putative class of Hourly Utility Locators includes more than 100 members.

94.    Thus, the Hourly Utility Locators are so numerous that the joining of all potential class members in one lawsuit is impracticable.

95.    The Hourly Utility Locators are similarly situated in the most relevant respects.

96.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week.

97.    Therefore, the specific job titles or precise locations of the various Hourly Utility Locators do not prevent class treatment.

98.    Rather, the Hourly Utility Locators are held together by UtiliQuest's uniform, illegal "ticket to ticket" policy, which systematically deprived Vanegas and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

99.    UtiliQuest's failure to pay earned wages and overtime wages as required by New Jersey wage laws results from generally applicable, systematic

policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

100.   UtiliQuest's records reflect the number of hours the Hourly Utility Locators recorded they worked each week.

101.   UtiliQuest's records also show the number of hours the Hourly Utility Locators *actually* worked each week.

102.   The back wages owed to Vanegas and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

103.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to UtiliQuest's records, and there is no detraction from the common nucleus of liability facts.

104.   Therefore, the issue of damages does not preclude class treatment.

105.   Vanegas' experiences are therefore typical of the experiences of the other Hourly Utility Locators.

106.   Vanegas has no interest contrary to, or in conflict with, the other Hourly Utility Locators that would preclude class treatment.

107.   Like each Hourly Utility Locator, Vanegas has an interest in obtaining the unpaid wages owed to them under New Jersey law.

108.   Vanegas and his counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

109.   Indeed, Vanegas retained counsel with significant experience in complex class and collective action litigation.

110.   And Vanegas and his counsel have adequate financial resources to protect the Hourly Utility Locators' interests.

111.   A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

112.   Absent this class and collective action, many Hourly Utility Locators likely will not obtain redress for their injuries, and UtiliQuest will reap the unjust benefits of violating New Jersey wage laws.

113.   Even if some of the Hourly Utility Locators could afford individual litigation against UtiliQuest, it would be unduly burdensome to the judicial system.

114.   Indeed, the multiplicity of actions would create a hardship for the Hourly Utility Locators, the Court, and UtiliQuest.

115.   Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

116.   The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

117.   Among the common questions of law and fact are:

a.    Whether UtiliQuest engaged in a policy and practice of prohibiting its Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket;

b.    Whether UtiliQuest engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for their shifts once they left their last assigned ticket;

c.    Whether UtiliQuest knew, or had reason to know, the Hourly Utility Locators were requested, suffered, permitted, or allowed to work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket;

d.    Whether UtiliQuest's "ticket to ticket" policy deprived the Hourly Utility Locators of pay for time worked "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket in violation of New Jersey wage laws;

e.    Whether UtiliQuest withheld earned wages from the Hourly Utility Locators for all hours worked, including hours worked "off the clock," in violation of the NJWPL;

19

f.    Whether UtiliQuest failed to pay the Hourly Utility Locators overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock," in violation of the NJWHL;

g.    Whether UtiliQuest's decision to withhold earned wages from the Hourly Utility Locators was made in good faith;

h.    Whether UtiliQuest's decision not to pay the Hourly Utility Locators overtime wages for all overtime hours worked as made in good faith; and

i.    Whether UtiliQuest's violations were willful.

118.    Vanegas knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

119.    As part of its regular business practices, UtiliQuest intentionally, willfully, and repeatedly violated New Jersey wage laws with respect to Vanegas and the other Hourly Utility Locators.

120.    UtiliQuest's illegal "ticket to ticket" policy deprived Vanegas and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under New Jersey law.

### UTILIQUEST'S VIOLATIONS WERE WILLFUL AND/OR
### DONE IN RECKLESS DISREGARD OF NEW JERSEY WAGE LAWS

121.   Vanegas incorporates all other paragraphs by reference.

122.   UtiliQuest knew it was subject to the NJWHL's overtime provisions.

123.   UtiliQuest knew the NJWHL required it to pay non-exempt employees, including Vanegas and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

124.   UtiliQuest also knew it was subject to the NJWPL.

125.   UtiliQuest knew the NJWPL prohibits employers, like UtiliQuest, from withholding earned wages from employees, including Vanegas and the other Hourly Utility Locators, beyond their regular pay day.

126.   UtiliQuest knew Vanegas and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

127.   UtiliQuest knew it paid Vanegas and the other Hourly Utility Locators on an hourly basis.

128.   UtiliQuest knew Vanegas and each Hourly Utility Locators worked over 40 hours in at least one workweek during the 6 years before this Complaint was filed because UtiliQuest required these employees to report their hours worked to UtiliQuest using its timeclock system.

129.   UtiliQuest knew the NJWHL and NJWPL required it to pay employees, including Vanegas and the other Hourly Utility Locators, for all hours they performed compensable work.

130.   UtiliQuest knew that, as Vanegas' and the other Hourly Utility Locators' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that UtiliQuest did not want performed.

131.   UtiliQuest knew it prohibited Vanegas and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket.

132.   Nonetheless, UtiliQuest knew Vanegas and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket.

133.   Likewise, UtiliQuest knew it required Vanegas and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket.

134.   Nonetheless, UtiliQuest knew Vanegas and the other Hourly Utility Locators performed compensable work "off the clock" after they left their last assigned ticket.

135.   UtiliQuest knew it controlled Vanegas' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work.

136.   UtiliQuest knew Vanegas' and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was undertaken for UtiliQuest's predominant benefit.

137.   UtiliQuest knew Vanegas' and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was necessary to the principal work they performed as UtiliQuest Utility Locators.

138.   UtiliQuest knew Vanegas' and the other Hourly Utility Locators' Locators' pre- and post-ticket "off the clock" work was integral and indispensable to their work as UtiliQuest Utility Locators.

139.   Thus, UtiliQuest knew it requested, suffered, permitted, or allowed Vanegas and the other Hourly Utility Locators to work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

140.   In other words, UtiliQuest knew, should have known, or recklessly disregarded whether Vanegas and the other the Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

141.   Nonetheless, UtiliQuest did not pay Vanegas and the other Hourly Utility Locators for the compensable work they performed "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

142.    Thus, UtiliQuest knew, should have known, or recklessly disregarded whether it failed to pay Vanegas and the other Hourly Utility Locators for all the hours they performed compensable work.

143.    UtiliQuest's decision to prohibit Vanegas and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket was neither reasonable, nor was it made in good faith.

144.    UtiliQuest's decision to require Vanegas and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket was neither reasonable, nor was it made in good faith.

145.    UtiliQuest's failure to pay Vanegas and the other Hourly Utility Locators overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

146.    Likewise, UtiliQuest's decision to withhold earned wages from Vanegas and the other Hourly Utility Locators was neither reasonable, nor was it made in good faith.

147.    UtiliQuest's failure to pay Vanegas and the other Hourly Utility Locators all their earned wages was not the result of a *bona fide* dispute.

148.    UtiliQuest knowingly, willfully, and/or in reckless disregard carried out its illegal "ticket to ticket" policy that deprived Vanegas and the other Hourly Utility

Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek in violation of the NJWHL and NJWPL.

149.    UtiliQuest knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated New Jersey wage laws.

150.    Indeed, UtiliQuest has been sued repeatedly by employees for failing to pay earned wages and overtime wages in violation of federal and state wage and hour laws, including for the same illegal "ticket to ticket" policy that is the subject of this lawsuit. *See*, *e.g.*, *Moreno v. UtiliQuest, LLC*, No. 2:20-CV-03156-AR-MRW (C.D. Cal.); *Muniz v. UtiliQuest, LLC*, No. 2:19-CV-08759-PA-SK (C.D. Cal.); *Turner v. UtiliQuest, LLC*, No. 3:18-CV-00294 (M.D. Tenn.); *Signorelli, et al. v. UtiliQuest, LLC*, No. 5:08-CV-00038-WTH-GRJ (M.D. Fla.).

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
### (CLASS ACTION)

151.    Vanegas incorporates all other paragraphs by reference.

152.    Vanegas brings his NJWHL claim on behalf of himself and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23

153.    UtiliQuest's conduct violates the NJWHL (N.J.S.A. 34:11-56a, *et seq*.).

154.    At all relevant times, UtiliQuest was subject to the NJWHL because UtiliQuest was (and is) an "employer" within the meaning of the NJWHL. N.J.S.A. 34:11-56a1(g).

155. At all relevant times, UtiliQuest employed Vanegas and the other Hourly Utility Locators as its covered "employees" within the meaning of the NJWHL. N.J.S.A. 34:11-56a1(f) and (h).

156. The NJWHL requires employers, like UtiliQuest, to pay non-exempt employees, including Vanegas and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. N.J.S.A. 34:11-56a4(b).

157. Vanegas and the other Hourly Utility Locators are entitled to overtime wages under the NJWHL.

158. UtiliQuest violated, and is violating, the NJWHL by employing non-exempt employees (Vanegas and the other Hourly Utility Locators) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those hours worked "off the clock" before their first assigned ticket and after their last assigned ticket. *See* N.J.S.A. 34:11-56a4(b).

159. UtiliQuest's unlawful conduct harmed Vanegas and the Hourly Utility Locators by depriving them of the overtime wages they are owed.

160. Accordingly, UtiliQuest owes Vanegas and the other Hourly Utility Locators the difference between the overtime actually paid and the overtime pay actually earned, which to-date, remains outstanding. *See* N.J.S.A. 34:11-56a25.

161.   In violating the NJWHL, UtiliQuest acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Jersey law.

162.   Thus, UtiliQuest is also liable to Vanegas and the other Hourly Utility Locators for an additional amount equal to 200% of their unpaid wages as liquidated damages. *See* N.J.S.A. 34:11-56a25.

163.   Finally, Vanegas and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* N.J.S.A. 34:11-56a25.

## COUNT II
### FAILURE TO PAY ALL WAGES UNDER THE NJWPL
### (NEW JERSEY CLASS)

164.   Vanegas incorporates all other paragraphs by reference.

165.   Vanegas brings his NJWPL claim on behalf of himself and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23

166.   UtiliQuest's conduct violates the NJWPL (N.J.S.A. 34:11-4.1, *et seq.*).

167.   At all relevant times, UtiliQuest was subject to the NJWPL because UtiliQuest was (and is) an "employer" within the meaning of the NJWPL. N.J.S.A. 34:11-4.1(a).

168.   At all relevant times, UtiliQuest employed Vanegas and the other Hourly Utility Locators as its covered "employees" within the meaning of the NJWPL. N.J.S.A. 34:11-4.1(b).

169. During the course of their employment, UtiliQuest agreed to pay Vanegas and each Hourly Utility Locator set hourly rates of pay.

170. Vanegas and each Hourly Utility Locator accepted UtiliQuest's offer.

171. Vanegas' and the Hourly Utility Locators' agreed hourly pay are therefore "wages" within the meaning of the NJWPL. N.J.S.A. 34:11-4.1(c).

172. The NJWPL requires employers, like UtiliQuest, to pay employees, including Vanegas and the other Hourly Utility Locators, "the full amount of wages due" to these employees for all the time they work at the rate agreed to by the parties on their established and regular paydays. N.J.S.A. 34:11-4.2.

173. UtiliQuest violated, and is violating, the NJWPL by knowingly failing to pay Vanegas and the other Hourly Utility Locators the full amount of wages these employees earned (at their agreed hourly rates) for all the hours of work they performed, including those hours worked "off the clock" before their first assigned ticket and after their last assigned ticket. *See* N.J.S.A. 34:11-4.2.

174. Vanegas and the other Hourly Utility Locators did not authorize UtiliQuest to withhold these unpaid earned wages.

175. Vanegas' and the other Hourly Utility Locators' earned wages have remained unpaid for more than 30 days.

176. UtiliQuest's unlawful conduct harmed Vanegas and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

177.   Accordingly, Vanegas and the other Hourly Utility Locators are entitled to recover their unpaid earned wages (at their agreed hourly rates). *See* N.J.S.A. 34:11-4.10(c).

178.   In violating the NJWPL, UtiliQuest acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Jersey law.

179.   Thus, UtiliQuest is also liable to Vanegas and the other Hourly Utility Locators for an additional amount equal to 200% of their unpaid wages as liquidated damages. *See* N.J.S.A. 34:11-4.10(c).

180.   Finally, Vanegas and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* N.J.S.A. 34:11-4.10(c).

## JURY DEMAND

181.   Vanegas demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Vanegas, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

a.     An Order certifying a class action pursuant to FED. R. CIV. P. 23;

b.     An Order appointing Vanegas and his counsel to represent the interests of the Hourly Utility Locators;

c.      An Order finding UtiliQuest liable to Vanegas and the other Hourly Utility Locators for unpaid overtime wages owed under the NJWHL, plus liquidated damages in an amount equal to 200% of their unpaid overtime wages;

d.      An Order finding UtiliQuest liable to Vanegas and the other Hourly Utility Locators for unpaid earned wages owed under the NJWPL, plus liquidated damages in an amount equal to 200% of their unpaid earned wages;

e.      Judgment awarding Vanegas and the Hourly Utility Locators all unpaid wages, withheld earned wages, liquidated damages, statutory damages, and any other penalties available under the NJWHL and NJWPL;

f.      An Order awarding attorneys' fees, costs, and expenses;

g.      Pre- and post-judgment interest at the highest applicable rates; and

h.      Such other and further relief as may be necessary and appropriate.

Dated: December 14, 2023

Respectfully submitted,

**BERGER MONTAGUE PC**

*/s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez
NJ No. 017642011
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-4635
Fax:    (215) 875-4604
crodriguez@bm.net

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vices forthcoming*

**ATTORNEYS FOR VANEGAS AND
THE HOURLY UTILITY LOCATORS**